May it please the Court, Federico Sayre for Carmen Jimenez, Sonia Jimenez, Lorena May, Tony May, and Humberto Menchaca, appellants. Most of what I will say with regard to the facts is based upon taking the facts in a light that's most favorable as required under the standard de novo review. The evidence is clear that a previous altercation had subsided when the police arrived. Well, not just my clients, but all the depositions taken of the party goers have to under the law. So that had subsided. What happened is the police failed to turn the lights on. They failed to stop the live music. And essentially what you had is a police assault without really any probable cause. Somebody had called and said there was a fight amongst, quote, gangster-type people. There's no evidence that there were any shaved heads, gang colors, gang clothing, weapons, except for one. Actually, there is evidence. They said there were shaved heads and they said there were gang clothing and stuff like that. Again, from taking it in light most favorable to my clients. There was a knife that was found downstairs. And I guess the nature of that is it's not clear when it was found. It was found on the way up. It would seem to not be connected unless one assumes that Mexican people on the second floor would be connected to a knife, and that would be constitutionally abhorrent. They said it was a switchblade. Switchblade. Where is that? It was found on the first floor. Well, where did it say it was a switchblade? Police say it was a switchblade. The only report I saw said it was a knife. All right. A knife in any event. I'm just curious. I don't know. Just there's an alleged knife that is found downstairs. Clearly not in the banquet room. So if it was found on the way up, then there's no reason that anybody from the party would have dropped their knife there necessarily. And if it's on the way down, then it seems to be after the fact justification. But there was no proper assessment made of what was going on. The police attacked in a police assault based basically on this idea of these gangster-like people with no justification. They were swinging billy clubs, batons, I guess. They were screaming or yelling obscenities to people. They were shoving and pushing people without any apparent justification. Looking at the issues one by one, Sonia, who was never convicted of any charges, does not ever, even under the police statements, actively intervene as occurred in the Jackson case. My opponent uses the Jackson case as a means for justifying the reaction of the police officer. But the woman in Jackson came to the aid of her son and actively, in the words of the court, actively intervened. Sonia leans over to see what's happening to her brother-in-law, Tony, who is being pummeled on the floor. There is no indication that she did it. But let me just, yeah, she gets a single push. She gets a push in the chest. Right. And she instinctively reacts to a man pushing her in the chest and pushes back. And that's the excessive force. No. And then she realizes that it's a police officer and she raises her hand. Right. And steps back in the universal symbol of somebody who is not resisting and surrendering. And then she's assaulted because the officers jump her, tackle her, and bring her down to the ground violently so she hits her face and put their knees in her back. No way justified by the fact that she's raising her hand and stepping back. If a person cannot retreat in that fashion, then they can never do anything to avoid being beaten or violently thrown to the ground. Once that occurs, her mother, Carmen, who is 49 years old, a frail build, basically says from three to four feet away, you can't treat my daughter like that. What mother wouldn't? She doesn't actively intervene like Jackson. She just says it. And the officer turns around and I say that the fact she's susceptible to the fact that he approaches her and shoves her without any regard to her safety, shoves her in such a way that she falls directly backwards and hits the post of an upturned chair, and that's where the grievous injury occurs. Later, as Sonia is being taken down the stairs, she's not resisting. She's not doing anything except she says a bad word when she refers to the officer and says, I used to trust you. And why are you doing this? They punish her for her statement, just like they punished Carmen for her statement. They shove her on the stairs. The only reason that she is not seriously hurt is because perhaps she's younger and she's able to avoid being injured, but that's just through fortuity, not through any concern of the officer for safety. Again, she's shoved on the stairs. Now, what does that lead to? That leads to her husband, who's down sitting there, seeing his wife shoved and almost losing her balance on the stairs. He stands up and he says, that's my wife. What are you doing? And then he's shoved up against the bar with two hands, and that's where he gets assaulted, taken down, and then led away in handcuffs. Lorena May. He pleads. After a mistrial, first time he pleads, yes. Unfortunately, he did. And I think that that does have an effect on his case. But I think that the behavior is indicative of the type of inappropriate and aggressive behavior that was going on that night. Let me ask about Sonia as opposed to Carmen. Yes. In terms of the qualified immunity analysis, wasn't she perceived as interfering in Tony's arrest? That's what he says. But the only thing that he ever says is that she leaned. She doesn't say that she tried to get in, she tried to do anything. She leaned to see better because her view was being blocked. Yes, it is. But they never convicted her of anything. And what she did is she stepped back and held her hands up and retreated and was doing nothing to resist it. At that point, she was violently taken down by several officers. I'm sorry. I'm sorry. Was not probable cause to arrest her. That's right. She didn't punch him. She, a man pushes her in the breast. I say a woman instinctively pushes back until she recognizes that it's a police officer. She didn't push a police officer. When she recognized it was a police officer, she held up her hands and stepped back. Not anymore. Well, there was certainly no probable cause to take her down the way they did. That's a separate, separate situation. We're trying to get all these. She has both the excessive. I think, you know, in fairness, I should say there's probably probable cause to say that if she shoves a police officer, even though she didn't know it was a police officer, the officer may be mistaken. But under Saucier, I guess he can get away with that mistake. I think so. I think so. As to Umberto, Umberto Menchaca. He, what exactly is the relevance of the conviction there? I mean, what we have is somebody who, what was the, was his plea of guilty with regard to that particular incident or was something happened earlier? Do we know what it was for?  It was a default situation because he had been through a long trial and he had no money to try it again. So it was a default situation. He did have a hung jury the first time. He was not convicted. Charged with anything. None whatsoever. Tony May. Yeah. Who is not Mexican, by the way. I guess the misfortune to be to be married into a Mexican family. He's a similar one. Resisting. Yeah. And other charges. There was no problem. Okay. There were two aspects of that. Like the Barbour case, we start there. He was tackled from behind without any notice. If you recall, that's the gay man that was tackled from behind. And the court found that it was impossible or should not be done to determine the level of force that was involved at that stage, at summary judgment stage. So that would be the first position. His tackling. Well, wait, does he have a false arrest claim? He does not have a false arrest claim. He has the excessive force by Lee and Chamberlain. That's right. I think that was taken out of my hands by the fact that he pled to resist it again on a default situation. It was not convicted. It was after the trial. But in the first instance, he's taken down without any probable cause. Even they say he wasn't doing anything aggressive. He had his back to the police. He was holding his arms. He was actually restraining his father-in-law, who was apparently upset at whatever verbal altercation had occurred involving the father-in-law's nephew. And Tony was being the peacemaker, but no good deed will go unpunished. So he was basically taken down without any probable cause whatsoever. It is clear that he has admitted that he resisted to a point where he was said, quit resisting. And he says, clearly, I stopped resisting at that point. And it was only after that, again, taking the evidence to the light most favorable, that he was punched several times and maced. So it's at either ends of that resisting issue that we contend that there was excessive force. May I just grab a glass of water? Oh, yes. Thanks. Just to sort out Mr. May's situation. So he's the pepper spray is from Officer Chamberlain? Yes. And that's before he handcuffs him? Supposedly he claims it's to bring him under control. That's what he says, yes. Okay. But in a light most favorable to us, the macing occurs after he has stopped resisting, when the officer says, quit resisting, and he ceases. And then he's punched, and then he's maced. I know there's a conflict, but that's for the jury to decide, respectively. Lorena May, who was the organizer of this happy event party for her husband, Tony, goes up to Officer Torres and says, Officer, what's going on? And for trouble, she gets elbowed in the chest and goes down to one knee. Again, being punished for inquiring, and if I will, exercising. That seems like bad police tactics and rude, but in her case, I'm trying to understand why it's excessive force, even if we take it as said. Because there was absolutely no justification to put his hands on her. She didn't do anything. She wasn't interfering with his progress. She wasn't obstructing. She wasn't convicted for obstructing. In fact, she was acquitted. She just is going up to him and saying, hey, what's going on, Officer? And for that trouble, she gets elbowed in the chest and goes down. Well, the officers were there because they were called because some kind of a fricass was going on? That's what was said to them, that there was a fight at the bar, which was not a major portion of the banquet hall. But there had been, apparently, a fight, verbal altercation at the bar, between about two or three men who were right at the bar area, and somebody from the restaurant called and said there was a fight going on between gangster-like people. And so they came in. There's a document that's, I guess, Chamberlain's report, and it says something different than what I understood the record to be, unless it's a different incident. It says that Lorena May came up and told us that she was in control and everything was okay. And Sergeant Hamill told Lorena May to get out of her way. She did not comply, so Sergeant Hamill used his arm and pushed Lorena May aside. Then Lorena May stepped in front of me and blocked my path up the stairs. I told her to step aside. She again told me she was in charge. She said, okay, she did not comply with my request. Step aside. So I used my arm to push her against the arm rail. Now, that suggests that both Hamill and Chamberlain purposely did this, but the discussion in the brief seems to assume that they're now saying that they didn't, that it was just an accident. So is this the same incident or a different incident? It would have to be, assuming that that happened at all, it would have to be a different incident, because we're talking about Officer Torres, who as he's... You're not claiming excessive force with regard to that incident? No. And so as the Officer Torres is making his way through this sort of darkened, semi-darkened place, Lorena May, perhaps because he was a Mexican person, she thought she might get a sympathetic hearing, she says, Officer, Officer, what's happening? And that's when she gets elbowed and goes down. This all took place in the bar? No, sir. This is in a banquet hall. It's a large banquet hall. The bar is a small portion in one portion, one part of the banquet hall. The entire party is the banquet hall, which is on the second floor. There is a bar in the banquet hall, and that's where the fight occurred, the verbal altercation. But it was not a, we say, it was not a general melee in the banquet hall, as has been described by the officers, with bottles flying and so forth. There is no evidence of any broken bottles. But they were called and told that there was. Yes, there were. And somebody saw a knife somewhere. Downstairs. Either before or after, we're not sure. And so they thought themselves to come and calm down a difficult situation. Right, but they made no attempt to assess it. They didn't turn on the lights, so their attack takes place in the semi-darkness. They claim that they announced themselves that it would be difficult over a live band. They made no attempt to shut down the music. They just went in and swinging clubs and overturning tables and screaming profanities at people. This is like a species of contempt of cop. It's assault, people that, you know, in those kind of cases where they, I tried the Rodney King case, where the person at the end of the pursuit is punished because he caused the cops to have to pursue him. It's a species of contempt of cop. And they just didn't give any opportunity for anyone to explain, calm down, or do anything. They just attacked. And that's why I call it a police assault. And that's in the light most favorable to my clients as required. We have five different cases here, and we have evidence. So when we're looking at the evidence that favors the non-moving party, do we look at that person's evidence or do we look at all of the evidence? I mean, for example, we have situations, for example, as I understand it with regard to Sonia, she doesn't say she was hit with batons, but her mother says she was hit with batons. Yes, there is a conflict, although there is no reference in the record to that. Or in my opponent's brief to that particular portion of the record. But there is that conflict at least expressed in the brief. So then what? Do we look at all of the evidence? Do we look at her evidence? Well, I think you have to look at her evidence. It's her case. And that's in a light most favorable to her. So we don't look at the other people's comments, or is that part of her case? Well, that's an interesting question. I don't think Saussure is instructive on that point. It talks about looking at the totality of the circumstances. You know, does that mean every other case or does it mean just? I don't think so. But that's something I guess that's why you're justices and I'm just a guy. Just judges. Yeah. Do you want to retain the rest of your time? I would. Thank you very much. We'll hear from the city. Good morning, Your Honors. May it please the Court. Once again, my name is Lois Boback, and I'm representing in this case defendant officers Chamberlain, Lee, Bates, and Torres. I think that I'd like to address the question that was raised at the end of counsel's argument, and that is what evidence does the court have to look at in addressing the question of qualified immunity? In their reply brief, the plaintiffs in this case have suggested that what the court has to do is very carefully segregate out the evidence of each particular plaintiff and disregard all of the evidence that any other admission that any other plaintiff makes, any comment that any third person makes. I can't spell claims because there are instances in which other witnesses other than the individual make stronger arguments with regard to excessive force. That's true. I think that what the case law requires is that obviously the court has to look at the evidence most favorable to the plaintiff, but that doesn't mean that you disregard everything that everybody else said, because one of the other elements of qualified immunity is a finding by the court that, based on the totality of the circumstances, was the officer's conduct objective. Pardon me? I thought we do disagree. Because this is a qualified immunity, essentially, appeal, and if it goes to summary judgment appeal, we do agree on the opinion that there was a moving party. They're not a moving party, no? Yes and no. Otherwise, we're in a position of trying to reconcile conflicting evidence. We can't do that. No, and that's not what I'm suggesting that the court do. But I think that the plaintiffs take the argument too far. The plaintiffs suggest, for example, by way of example, Sonia Jimenez said, I didn't hear the police say, you know, we're here, we're the police, everybody sit down, shut up, get out of the way if you don't want to be arrested. Umberto Menchaca and Sonia Jimenez said that they did hear those things. So for the purpose of analyzing Sonia Jimenez's claim, and I don't think the question of whether or not she heard the police officer say that is relevant to her claim for excessive force. But say it was. I don't think that the court has to assume for the purposes of the qualified immunity analysis. She didn't hear it. But that doesn't mean. Yes, that's different than she doesn't say it. And that doesn't mean that the court, in assessing the totality of the circumstances and whether a reasonable police officer could have believed that his actions were the police, we're here, everybody sit down, shut up, go away if you don't want to be arrested. And the plaintiffs are suggesting that you have to assume that they didn't say that for Sonia Jimenez's purposes because she said. But similarly, therefore, we have to assume that Sonia Jimenez was beaten with batons. Except that Sonia Jimenez doesn't make a claim against the officers who allegedly hit her with batons. The claim of excessive force by Sonia Jimenez is twofold. First, she argues that when Officer Lee pushed her away after she leaned around him to see what was happening to Tony May, that that push was excessive force. And then she argues that when Officer Chamberlain and Officer Lee were escorting her down the stairs. You don't think that she's claiming as was stated that the way in which she was arrested was excessive force? She has not made that claim in her briefs. And she did not make that claim down below. She made two claims of excessive force. She claimed that Officer Lee used excessive force when he pushed her after she leaned over him. And she claimed that Officer Chamberlain's push as they were walking down the stairs was excessive. That was the push on the stairway? That was the push on the stairway, correct. I mean, it can't be that you don't look to any other evidence, but it really is a question of looking to the evidences related to that person's claim. So it's kind of a fine line. Yes, but other relevant evidence can apply and be relevant to each individual's claim, regardless of whether that person said it. So, for example, Sonia Jimenez was watching Tony May being arrested. And it wasn't until the end that her view was obstructed, and she leaned around Officer Lee. But otherwise, she had an unobstructed view of what's happening. And she said that she heard the officers tell Tony May to stop resisting several times. Tony May admits that the officers told him to resist, to stop resisting, several different times. It wasn't just stop resisting, okay, I'm stopping. It was stop resisting, stop resisting, stop resisting. And he said it several times. Sonia Jimenez said that he finally stopped resisting after he was sprayed with the mace. We don't have to ignore them. You do have to. You have to take the overall, the piece of the overall evidence that is most favorable to the moving party, right? So why does it matter whether it's Sonia Jimenez who says that it was at the end, or the officers who say at the end? He says otherwise, and you have to take it. And that is my statement. Then we are responsible. I don't believe that he does actually say. But if there was a conflict, then we have to take his version. And I don't believe that there was a conflict. I think that he was somewhat ambiguous in his testimony. He said, it all happened so quickly. And the officers. I thought the testimony, and I could be wrong, was that there was pepper spray after he was pinned to the ground. That's his view. After he was on the ground, that is correct. Pinned to the ground. After he was on, the officers had taken him to the ground. They were attempting to get his hands behind his back so that they could be handcuffed. According to the officers, he wasn't cooperating. So one officer punched him, and one officer sprayed him in the face with pepper spray. What about according to him? According to him, it all happened at the same time. The officer said, stop resisting. He was punched. He was hit with pepper spray. He stopped resisting as soon as he realized he was an officer. And after that, the pepper spray. No, he said that they asked him to stop resisting several times. And that it was, that he, and I wish I had it right in front of me. Well, none of this is a turned out to matter, this problem that we're discussing. Maybe we should go on to this. Because as we get into each situation, it's only because you wind up saying that he didn't actually say that. Or that the particular person involved has no evidence to favor their view that we're getting anything. Yes, Your Honor, I guess I would agree that if Sonia Jimenez said, I have an excessive force case because I was beaten by a baton, and the officer said I didn't beat her with the baton, you have to accept Sonia Jimenez's case. She didn't say she was beaten by a baton. If her claim was they used excessive force on me in the way they subdued me, and her mother said she was hit by a baton, she doesn't say that, but it's still taken to a fact. I think you can still take into account. Let's go to the next one. As I'm understanding it, as we're getting deeper into this. Move on to the individual cases. Lorena May, Officer Torres, and you correctly pointed out, Your Honor, that the pushes that Officer Chamberlain reflected in his police report are different than the allegation that Lorena May is making. Lorena May is walking toward the bar because somebody tapped her on the shoulder while she was dancing and said, hey, there's a problem at the bar, you ought to go over there and check out what it is. So she's walking to the bar. Officer Torres passes her. That's the first time she becomes aware that there are police officers in the building. He gets a couple of steps ahead of her, and she tries to catch up to talk to him, and he allegedly throws an elbow. He doesn't remember doing it, but assuming you accepting her facts. The question is, if he threw an elbow at her. Was it objectively reasonable under all of the circumstances? They had a 911 call that said there's a gang fight. There's a big fight up in the banquet room with gang types. They get to the premises, and the restaurant manager says there's a big fight upstairs. Things are getting thrown around. Stuff is getting broken up. But on the plaintiff's version, when they get upstairs, they don't see any of that. Well, even under the plaintiff's version, Humberto Mancheca testified that a restaurant employee was holding somebody around his chest. He didn't throw anything. That's the testimony I'm saying. No, but they only have a split second to figure out. Let's get to the bar. Let's find out what's going on. She's less problematic under the law. Let's look at the mom. The mom, Carmen Jimenez. The incident with Carmen Jimenez occurs after Officer Lee, and it's Officer Lee who is alleged to have pushed Carmen Jimenez, and she falls back. This happens after Sonia Jimenez had already leaned over and around Officer Lee, so he feels that he was interfered with by Sonia Jimenez. It occurred after. Well, he's in the process of actually taking Tony May into custody. Yeah, if she leans around him and precludes him from doing what he is doing with Tony May. The second part, the precluding. I don't know where the precluding is. Well, if all she does, if I'm looking around the podium like this, that's not interference. But if I go like this, then perhaps I am interfering. What's the evidence? Pardon me? What is the evidence? She says that she leaned around him. We're talking about the mother now, correct? We're talking about the mother, but you moved to Sonia. Because I'm setting up what Officer Lee knew. I understand that, but let's not get into Sonia's liability at this point, or the officer's liability because of Sonia. I understand. The way Officer Lee reacted and responded to Carmen Jimenez is based on his experience that evening. And just before that, he was interfered with, or at least from his perspective, he was interfered with by Sonia Jimenez, and Sonia Jimenez had pushed him. He didn't know whether that was going to happen again. He's got Sonia Jimenez in handcuffs. He's escorting her out of the premises. It's reasonable for police officers to want to move arrestees out of the premises as quickly as possible so that they can. The mother comes up to and says, what are you doing to my daughter? And Officer Lee pushed her out of the way. Said something that used impolite, very impolite language. And I'll admit that that's, I find the use of the language. The record indicates that she was 49. So that's what he was doing. But he doesn't. But what she says, I know what he says because he has this in mind, but she says, look, I'm over here. I'm not yelling. I'm not upset. I'm not even there. And all of a sudden. But she says she walked over to him. She says she approached him. She doesn't say that the officer approached her. So the officer, she obviously got close enough to be within arm's reach. Because she was three or four feet away. She said that when she started, she was four feet away, but she was walking toward the officer. Absolutely. I don't disagree with you, Your Honor. The question is what a reasonable officer could have believed in the circumstances. And I don't think that it's fair to care. Other than she wanted to know what he was doing to her daughter. Officer Lee was escorting. If she had come downstairs after Sonia Jimenez was in the police car and was safely put away and said, look, I want you to explain what it is that you were doing to my daughter, that's a different story. But she approaches Officer Lee while Officer Lee is in the process of taking somebody out of a room that the plaintiffs can see. It was a very chaotic situation. It's a very chaotic situation before the police got there. I'm not aware of that case, Your Honor, but Carmen Jimenez wasn't arrested. The officer just pushed her out of his way so that he could get along, he could move on. Well, I don't think so. I think the circumstances, the fact that she fell is very unfortunate. She says that in part she fell because she was wearing high heels. Yes, but the officer doesn't necessarily can't. But also the fact that she acknowledges that part of the reason she fell is because she was wearing high heels suggests that it wasn't such a significant push that if she wasn't wearing high heels that it would have caused her to fall. There's no evidence in the record that she believed that the officer pushed her with such force that he intended her to fall. He's just trying to do his job and get Sonia Jimenez out of the banquet room. Any evidence that she was not in his way? She got into his way when she got within arm's reach. She approached him when she first noticed him. She was several feet away from him. But there is no evidence in the record. Sonia Jimenez doesn't say. Carmen Jimenez doesn't say. Nobody says that the officer approached Carmen Jimenez. Well, evidence is that she was in his way in any fashion at all. I don't believe that there is anything in the record that says she stepped in front of me. He says get out of my way. He says get out of my way and he pushes her her way. So I guess that would be suggestive of the fact that she was in his way or that he reasonably believed that she was getting in his way. He, as I understand it, was in a very similar circumstance. He was downstairs. He was one person who had listened to him. He was one person. The officers. Yes. He saw his wife being dragged and pushed down the stairs. And he, on his version, says loudly and maybe obnoxiously, but without any hint of violence, what are you doing to my wife? And they rush up and pin him against the wall. So that sounds very similar. It is similar, factually, to what happened with Carmen Jimenez. Officer Bates was responsible for controlling the downstairs bar area. Several members of the party had come down and were waiting in the downstairs bar area. The officers had to come by that area in order to escort arrestees out. Other officers were coming up through that area to get up to the upstairs area. So there was a legitimate governmental need to keep that area secure. They had their own in-house guards? I don't believe that there were in-house security at the restaurant, Your Honor. There's no evidence that there was in-house security, which is perhaps why there was a 911 call. But in any event, Humberto Menchaca gets up, starts taking a step. He admits that he perhaps took a step toward Officer Bates. At quite a distance. Officer Bates wants to make sure that Menchaca does what he was asked to do originally, which is sit down and stay quiet. He moves up and he pushes him up against the bar. Well, there's disputed evidence on that. And taking it from the plaintiff's perspective, he didn't ask him to sit down. But, you know, what officer... The fact that he pled guilty suggests that... It's my understanding that he pled guilty to disturbing the peace, but I don't know what that charge arose out of. I don't know whether it was something that happened upstairs. The record doesn't indicate. It might not. The record doesn't reflect one way or the other. Finally, I have a question. You've been very helpful again. Your brief talks about a switchblade knife being found upstairs. I didn't... Looking quickly, I can't find where it says switchblade knife. I don't remember where I got the switchblade knife part, but the... It's sort of magic, because knives are knives. But the part about the knife comes from the supplemental excerpt of the record page 4. It's a restaurant employee who is testifying. One officer, I believe that Officer Chamberlain was first on the scene. He didn't go upstairs. He waited for backup. And so other officers then arrived on the scene. And the testimony is page 4, lines 1 through 5. When the officers and I entered back into the building, the next gentleman down the stairs after Mr. Mendoza was a gentleman, and I heard the police say, quote, look, he has a knife, end quote. And then I saw him, as the other officers, he threw it into the corner. So it's clearly somebody coming from upstairs with a knife. And I don't recall, I apologize, Your Honor, I don't recall where in the record there was a reference to a switchblade. That's a very big deal out of it, and I don't think it's there. But anyway. I apologize if I misled the Court. It wasn't my intention. But I do believe that there was a reference to the fact that it was a switchblade. I just don't remember where in the record that was. The question that troubles me is with respect to Carmen and Humberto. Is under the Graham sort of flexible force, depending on the circumstances, is that something we really could decide as a matter of law? I mean, if you take their examples, it was a fairly extreme response to a, at least as to their own particular circumstance. They hadn't really done anything. They were more the bystanders. Is that something that really we would need to go to the jury in this circumstance? Because if we decided as a matter of law, in effect, we would be then giving the credence to the officer's point of view, wouldn't we? I don't think so, Your Honor. And, again, the qualified immunity is a two-step analysis. So even if the court concludes that there's a tribal issue of fact as to whether or not an officer, whether or not the force was objectively reasonable, the next step is a question of law. And that is whether or not the law was clearly established. And I think, may I continue the answer? I think that obviously there's an umbrella policy that's very well established, that police officers can only use that degree of force. Were they in uniform? They were in uniform, Your Honor. They were? They were. It's certainly well established that citizens are allowed to question the police because they do so only verbally. With respect to these two people, that appears to be what happened. So the question is whether the police are entitled, because of other stuff going on, having nothing to do with these people, to essentially transpose their concern about the Department and their concern about somebody else to Alberta and attack them physically for purely verbal speech-protective behavior. Is that what happened? I think that you need to put it in the entire context of everything that was happening that night. And I don't think that you can divorce, I don't think you can simply say that Carmen Jimenez was exercising her First Amendment right to speech. But she was. Well, I agree that she was. And I agree that if that was the only thing going on, that a police officer wouldn't be able to push her. If a police officer is walking down the sidewalk and somebody comes up and says, I don't like police, he can't push her into the street and knock her down. But that isn't what was happening that night. It was a very chaotic situation. He's got an arrestee that he is physically escorting out of the building. He had just been pushed by another woman in the, in fact, Sonia Jimenez. He didn't know whether or not somebody, after she interfered with what he was doing with Tony May, he didn't know whether or not she was going to come up and physically push him the way that Sonia Jimenez had pushed him. He has at that point the right to say, look, I just need to get Sonia Jimenez out of here. Get out of my way. Push her back. No, he, he, he used, he's very inappropriate language. But the use of inappropriate language. He didn't think she had a right to ask him questions. Well, and perhaps at that point when he is escorting her, when he is escorting her daughter out of the building, perhaps that's not the most opportune time to ask a police officer a question. He's, he has a job to do. He's got to secure the scene. He's got to get arrestees out of the building to make sure that they're safe, that the police officers are safe and that everybody else is safe. It's obviously very unfortunate that Carmen Jimenez fell, but I don't think that the force that was used was objectively unreasonable under the circumstances, and I don't think the fact that she suffered an injury, or at least alleges that she suffered an injury, can be used to show that the force was excessive under the circumstances. Thank you. Thank you very much for your time. About two minutes. The issue of whether the force was used that was excessive or not, I think consistent with the force of the statements made by the officer, we're justified in saying that it was excessive, but ultimately it's an issue for the jury to decide whether the circumstances involving a 59-year-old frail woman, even on high heels, in no way is there any evidence showing that she was obstructing him in any way. She came up to him and it's her testimony that he turned to her and said the words that you both know, all of you know, that he said, not only showing sexist behavior, but very aggressive behavior, without any regard whatsoever to her health and well-being, shoved her so she fell backwards, hit the upturned chair and permanently injured her, unfortunately, for everybody involved in the situation. But the issue of whether it was excessive force or not, as a parent, I would say the most appropriate time for you to say, what are you doing to my child is when your child's being roughed up. That's just a theoretical question. In this instance, it was force used. There's no question of probable cause. I'm going to try to arrest her. Nobody says they could. So why isn't any force excessive, unless she's actually in his way? Because you cannot use all degrees of force just because there's probable cause to arrest a person. I'm saying the opposite. Here there's no probable cause to arrest. She was not in his way. Why isn't that the end of the story in terms of whether pushing her was excessive force? Unless there's some evidence, which there is none and can be none under these circumstances, that shows that she was obstructing or interfering with him in any way, it is the end of the story. He said, get out of my way. He made it up somehow. Well, he says it. He says, get out of my way, you effing bee, because he has this aggressive mentality right now. He doesn't recognize that she's a little old lady and shoves her backwards in such a way that she injures herself. The issue with regard to the rest, Umberto, he does exactly what you would expect a husband to do. He says, hey, what are you doing to my wife? And he gets shoved back and pinned up against the bar. There's no indication that there was a lack of control downstairs. To the contrary, it appeared like everybody downstairs was minding their P's and Q's and doing nothing other than waiting for people to come downstairs. Again, a statement made, not a violent act. I think it's a part of the wrongful arrest claim. I think it's a fair reading of the wrongful arrest claim that everything about it was wrongful. Pardon me? The false arrest? There is a false arrest claim. Well, I don't think it draws it very nicely, but I think it is part of a wrongful arrest, the manner in which somebody is arrested. Does she have two claims? She has that claim, and she has a claim of excessive force.  Thank you. Sure. Thank you for your arguments, and the case of Jimenez v. City of Costa Mesa is submitted.
judges: Berzon, McKeown, King